IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TRAVIS W. TOWNSEND                PLAINTIFF

       v.        Civil No. 05-5080

JO ANNE B. BARNHART, Commissioner
Social Security Administration              DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff Travis W. Townsend brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423, and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## **Procedural and Factual Background**

The plaintiff filed his application for DIB and SSI on June 10, 2002, alleging an onset date of April 2, 2001. (Tr. 62-64, 187-189.) Plaintiff was eligible for DIB through December 2006. (Tr. 97.) The applications were initially denied (Tr. 32-33, 36-40, 190-195) and those denials were upheld upon reconsideration (Tr. 43-44, 196-198). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 45.)

On May 29, 2003, a hearing was held by the ALJ. The plaintiff was represented by counsel at this hearing. (Tr. 215.) The ALJ issued an unfavorable ruling on December 8, 2003,

deciding that the plaintiff was not disabled within the meaning of the Act. (Tr. 16-28.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 12-15). The Appeals Council granted the request for review, and issued an opinion adopting the findings of the ALJ, except the ALJ's findings that the plaintiff had the residual functional capacity (RFC) for a significant range of sedentary work. Rather, the Appeals Council found that--under the work-related limitations established by the ALJ--the plaintiff had the RFC to perform a significant range of light work, as defined by the Social Security Regulations. (Tr. 9.) The Appeals Council found that the plaintiff was not disabled under the Act. The plaintiff filed his complaint with this court on May 6, 2005, seeking judicial review of that decision. (Doc. 1.) Both parties filed appeal briefs with the court. (Docs. 6, 7.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 4.)

At the time of the administrative hearing, the plaintiff was 46 years of age and had completed high school and two years of vocational training in machine shop and tool and die. (Tr. 220.) He had previously worked as an aircraft machinist for 11 to 12 years, as a maintenance machinist for 3 to 4 years, as a line maintenance man and electronics technician for 6 years, and was working as an electronics technician and scale technician in his last job which ended in April 2001. (Tr. 221-224.)

Plaintiff quit his last job due to constant pain. (Tr. 225.) He testified that he experiences constant pain in his back, hips, and legs; numbness in his legs; chest pains; sensitivity to extreme hot and cold temperatures, and pain in his hands and knuckles that makes it difficult for him to handle small parts or to hold onto objects. (Tr. 226-227.) Plaintiff testified that he has experienced back pain since he was a youth, that the back pain forced him to quit the job as an

aircraft machinist, and that the back pain has progressed throughout the years. (Tr. 228.) Plaintiff testified that he takes thirteen milligrams of nitroglycerin per day through two time-released capsules. He also carries nitroglycerin sublinguals, which he takes as needed and uses them more during hot and cold weather. (Tr. 229.) For his back pain, plaintiff testified that he takes Vioxx which gives him some flexibility, but does not relieve the pain. He has taken Ultracet for back pain, but testified that he gets as much pain relief from Tylenol. Plaintiff stated that he takes Xanax at night to sleep. (Tr. 229-230.)

Plaintiff testified that he no longer maintains a garden, that his house is unclean because he is unable to push a vacuum cleaner, that he is unable to drive long distances, that he can stand and sit for three to ten minutes, and that he spends his days as a ham radio operator and servicing "old tube audio equipment" when he his able to hold onto the parts. Plaintiff is able to mow his yard on a riding lawn mower, but it takes him four or five "hitches" before he can complete that task. He testified to experiencing pain when riding in a car that goes around a corner to quickly on riding up on an elevator, as that compresses his spine. He testified that he has some difficulties affording the Vioxx. (Tr. 230-232.) Also, at the hearing, plaintiff's friend and former co-worker testified that he saw plaintiff's physical condition deteriorate over the 18 years he has known him. (Tr. 233-237.)

The ALJ also took the testimony of Sarah Moore, a vocational expert (VE). The VE testified that all of plaintiff's past relevant work (PRW) was heavy, skilled occupations. The ALJ presented the following hypothetical to the VE:

ALJ: I'd like you to assume a hypothetical person of the claimant's age, education with that same work background. First, this person lifts sedentary level, but cannot do grasping or fine manipulation with either hand, has to avoid temperature extremes, can

stand about ten minutes at a time, can sit about then minutes at a time. Because of chronic pain and fatigue, would require unscheduled, lengthy, frequent rest periods and that would result in a total of less than eight hours when you add up the walking, standing, and sitting. So, first, it's clear to me, the person couldn't return to any past work. Secondly, I would assume that based on those limitations there'd [sic] be no jobs in significant numbers in the economy the person could do. Would that be correct?
    VE: That is correct. Yes, sir.

(Tr. 238.)

The plaintiff lists Dr. Neil Mullins as his treating physician for his allegedly disabling conditions. (Tr. 77, 118.) Dr. Mullins saw the plaintiff in October and November 2000 and May 2001, where he received refills on his nitroglycerin medications. (Tr. 146-148.) In December 2001, Dr. Mullins noted that plaintiff reported back pains, but that he refused medications and an x-ray for further examination. (Tr. 145.) In April 2002, plaintiff met with Dr. Mullins to obtain a refill on some medications and "to talk about rehab. for back pain." At that time, his spine was x-rayed, Dr. Mullins diagnosed plaintiff with chronic back pain, and Dr. Mullins started plaintiff on Vioxx. (Tr. 144.) In July 2002, plaintiff saw Dr. Mullins with continued complaints of lower back pain, and again Dr. Mullins assessed plaintiff with chronic back pain and prescribed Vioxx with as-needed refills. (Tr. 142.) When Dr. Mullins saw the plaintiff in October 2002, plaintiff was assessed with Rheumatoid Arthritis. Plaintiff reported to Dr. Mullins's nurse that the Vioxx "help so much" but that he was unable to afford the medication. The record also reflects plaintiff requested Dr. Mullins review the stress test results order by Dr. Revard. Dr. Mullins assessed plaintiff's angina pectoris as stable and renewed the same medications plaintiff had been prescribed during the previous visit. (Tr. 141-142.) When plaintiff saw Dr. Mullins in April 2003, he requested refills of his medications and voiced "no questions or complaints at [that] time." (Tr. 173.) Again, plaintiff received the same

-4-

medications that he had previously be prescribed, along with samples of Ultracet for plaintiff to try. (Tr. 173.)

The plaintiff was referred to Dr. Ron Revard by the Commissioner for review of plaintiff's heart condition. Dr. Revard had plaintiff perform a treadmill stress test, from which Dr. Revard noted that there was no significant dysrhythmia and no significant ST or T changes. Dr. Revard diagnosed plaintiff with hypertension, chest pain, and degenerative disc disease. (Tr. 1201121.)

The plaintiff also submitted to the ALJ for review several reports following a back injury he received September 19, 1998. (Tr. 166-171.) Among these records includes an x-ray report from Dr. Richard Rodkin, who noted that there was "no evidence of fracture, dislocation, arthritic change, or destructive lesion" in plaintiff's right hip and "no evidence of fracture, dislocation, disc space narrowing, arthritic change or destructive lesion" in plaintiff's spine. Dr. Rodkin did note that there was "minor development variant of the spinal column at the lumbosacral level." (Tr. 171.)

Dr. Mullins submitted a letter to plaintiff's attorney stating that "it would be in the best interest of all concerned, for Travis Townsend to have a M.R.I. of his lower back" because "[h]is complaint is so severe and chronic that I think we need to find a definitive diagnosis to see if his complaint matches the physical findings." (Tr. 185.)

On August 2003, plaintiff was examined by Dr. William McGowan for a consultative physical examination. Dr. McGowan reported that plaintiff had normal range of motion in his cervical spine for flexion, extension, and rotation. Plaintiff was rated with a 0-60 degree flexion in his lumbar spine, with 0-90 degrees being normal. Dr. McGowan rated plaintiff with normal

AO72A
(Rev. 8/82)

range of motion in his shoulders, elbows, wrists, hands, hips, knees, and ankles, and a 100% ability to hold a pen and write, touch fingertips to palm, grip, oppose thumb to fingers, pick up a coin, stand and walk without assistive devices , and walk on heel and toes, however only a 60% ability to squat and arise from a squatting position.  Dr. McGowan opined that plaintiff could do work activities, however he might be moderately limited in his ability to handle objects "due to his diagnosis."  (Tr. 174-180.)

In his opinion, the ALJ finds that the plaintiff has an impairment or combination of impairments considered "severe" for purposes of the Regulations, however these impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 26-27.)  The ALJ does not find plaintiff's allegations regarding his limitations to be totally credible, and thus the ALJ finds that the plaintiff has the RFC to lift and/or carry up to 20 pounds occasionally and less than 10 pounds frequently, and that he is able to occasionally balance, kneel, crouch, crawl, and stoop, but is unable to climb.  The ALJ states that the plaintiff has the RFC to engage in a significant range of sedentary work on a sustained basis.  The ALJ finds that the plaintiff is not disabled under the Medical-Vocational Rules 201.21 and 201.28, Appendix 2, Subpart P, Regulations No. 4, used as a framework.  (Tr. 27.)

Upon review, the Appeals Council modifies the ALJ's decision, noting that the ability to lift and/or carry up to 20 pounds occasionally and less that 10 pounds frequently, to occasionally balance, kneel, crouch, crawl, and stoop, but unable to climb, requires a finding that the plaintiff has the RFC to perform a full range of work at the light exertional level.  (Tr. 10.)  As part of the Appeals Council review, the Council considered the physical examination report from Dr. Marcus Poemoceah, dated April 26, 2004.  (Tr. 8.)

AO72A
(Rev. 8/82)

Dr. Poemoceah found that plaintiff's range of motion in his cervical spine was limited to 30 degrees flexion (with 50 degrees normal), 20 degrees extension (with 60 degrees normal), and 40 degrees rotation (with 80 degrees normal). Plaintiff's lumbar spine had a range of motion of 45 degrees (with 90 degrees normal). Plaintiff was positive for muscle spasms in his back and neck. Plaintiff had a positive straight leg test on the right, but a negative result on the left. (Tr. 202.) Dr. Poemoceah rated plaintiff with normal range of motion in his shoulders, elbows, hands, knees, and ankles. Plaintiff's dorsalflexion and palmar flexion in his wrists were rated 40 degrees (with 60 degrees normal), and the flexion in his hips was rated at 70 degrees (with 100 degrees normal). (Tr. 202.) Dr. Poemoceah determined that plaintiff was able to hold a pen and write, touch fingertips to palm, oppose thumb to his fingers, pick up a coin, and stand and walk without assistive devices, however the doctor noted that plaintiff walks "markedly stiff." (Tr. 203.) Plaintiff grip strength was estimated at 100% of normal. Plaintiff was unable to tandem walk due to pain, unable to walk in his heels and toes, and unable to squat and arise from a squatting position. (Tr. 203.) An x-ray of plaintiff's spine "shows some facet arthritis possibly some joint space narrowing between the L2 3." (Tr. 204.) Dr. Poemoceah diagnosed plaintiff with degenerative joint disease, a slight hearing loss, hypertension for which plaintiff does not receive treatment, and degenerative disc disease. (Tr. 205.)

In considering this second consultative evaluation, the Appeals Council finds that "apart from a slightly diminished range of motion in the cervical spine and wrists, the findings do not differ significantly from those found by Dr. McGowan on August 7, 2003, and provides no basis for changing the decision." (Tr. 8.)

On appeal, the plaintiff argues that the ALJ erred in (1) failing to fully and fairly develop

the record by not requiring some testing as to plaintiff's alleged arthritis condition, (2) his evaluation under *Polaski v. Heckler*, 739 F.2d 1320, 1321 (8th Cir. 1984), and (3) failing to properly present and consider the VE's testimony. (Doc. 6.) In response, the Commissioner argues that (1) substantial evidence supports the decision that plaintiff could perform a light work, (2) the ALJ properly evaluated plaintiff's subjective complaints, and (3) the ALJ properly considered the Grids in finding that the plaintiff is not disabled. (Doc. 7.)

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v.*

AO72A
(Rev. 8/82)

*Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council. *See Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir.1999) (*citing Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir.1994)). Thus, in situations such as the present, this court's role is to determine whether the ALJ's decision "is supported by substantial evidence on the record as a

whole, including the new evidence submitted after the determination was made." *See Riley v. Shalala*, 18 F.3d at 622. In practice, this requires a decision as to how the ALJ would have weighed the new evidence had it existed at the initial hearing. *See id.* As the United States Court of Appeals for the Eighth Circuit has often noted, "this [is] a peculiar task for a reviewing court." *Id.* Critically, however, this court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision. *See Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993).

20 C.F.R. § 404.970(b) provides:

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.

Thus, the Appeals Council *must* consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *See Box v. Shalala,* 52 F.3d 168, 171 (8th Cir.1995) (*quoting Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir.1990)). To be "new," evidence must be more than merely cumulative of other evidence in the record. *See Williams v. Sullivan,* 905 F.2d at 216 (concluding that psychiatrist's report was new because it was not merely cumulative but instead presented more specific findings and conclusions). To be "material," the evidence must be relevant to claimant's condition for the time period for which benefits were denied. *See id.* Thus, to qualify as "material," the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See Jones v. Callahan,* 122 F.3d 1148,

1154 (8th Cir.1997) (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application); *Williams v. Sullivan,* 905 F.2d at 216 (finding that despite failure to identify onset date, doctor's report was material because it provided sufficient basis to conclude it related to the relevant time). Further, there must be a reasonable likelihood that it would have changed the determination. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1025 (8th Cir.2002).

In evaluating the objective evidence in comparison to the plaintiff's subjective complaints of pain, the ALJ noted that "[t]here is no evidence that the claimant has muscle spasms, positive straight leg raising tests, muscle atrophy or weakness, abnormal gait and coordination, circulatory deficits, etc." (Tr. 23.) This finding was based, in part, on the consultative evaluation conducted by Dr. McGowan. However in this report, Dr. McGowan does not even note whether straight leg tests were done or information obtained concerning muscle spasms. (Tr. 177.)

The consultative evaluation conducted by Dr. Poemoceah, however, notes that the straight leg test was performed, that plaintiff had a positive result on his straight leg test, that plaintiff had muscle spasms in his back and neck, that plaintiff was unable to tandem walk due to pain, unable to walk in his heels and toes, and unable to squat and arise from a squatting position. Dr. Poemoceah also noted that plaintiff walks "markedly stiff." The ALJ's statement that there is no evidence to support plaintiff's subjective complaints of pain is certainly belied by this evaluation found in the supplemental record. (Tr. 199-205.) Such evidence must be evaluated by the undersigned. For this reason, this matter must be remanded for proper analysis of all of the evidence. The undersigned finds there is a reasonable likelihood that, in light of the ALJ's basis for discounting plaintiff's subjective complaints of pain, the additional evidence

would have changed the ALJ's determination. *See Krogmeier v. Barnhart*, 294 F.3d at 1025.

On remand, the ALJ should obtain the x-ray report referenced by Dr. Poemoceah (Tr. 204) and should make further findings concerning plaintiff's financial status and his reported inability to afford medications.

**Conclusion:**

Accordingly, the ALJ's decision denying DIB and SSI to the plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for reconsideration to include a more through analysis of plaintiff's subjective complaints of pain and nonexertional limitations, as well as a review of whether plaintiff's financial status limited the treatment he sought during the relevant time period. On remand, the Commissioner should obtain the x-ray report referenced by Dr. Poemoceah (Tr. 204).

DATED this 19th day of May 2006.

                                        **/s/ Beverly Stites Jones**
                                        _____
                                        HON. BEVERLY STITES JONES
                                        UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**